IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.

**Criminal Case No. 3:17mj84**

TEVIN A. WILLIAMS,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Dismiss the Driving under the Influence

Charge ("Motion to Dismiss") (ECF No. 8) filed by Tevin A. Williams ("Defendant"). The

United States has responded ("Response") (ECF No. 14), and the Defendant has replied

("Reply") (ECF No. 15). The Court heard oral argument on August 4, 2017. Accordingly, this

matter is ripe. For the reasons set forth herein, the Court will deny the Motion to Dismiss.

### I.    Background

The Defendant, a member of the armed services, was charged on May 5, 2017 in a

Criminal Information with Driving Under the Influence, in violation of 18 U.S.C. § 13, the

Assimilative Crimes Act ("ACA"), assimilating Va. Code Ann. § 18.2-266. (ECF No. 1.)[1] The

Criminal Information alleges that on or about April 2, 2017, on Fort Lee, Virginia, property

administered by the Department of Defense and within the special territorial jurisdiction of the

United States, the Defendant was found operating a motor vehicle under the influence of alcohol,

with a blood alcohol content of 0.23. (*Id.*) At his June 15, 2017 arraignment, the Defendant

---

[1] The Defendant was also charged, via a violation notice, Ticket Number 6384115, with Expired Registration, in violation of Va. Code Ann. § 46.2-646. Both the Defendant and the United States moved to dismiss the violation notice. (ECF Nos. 9, 10.) By Order dated July 12, 2017 (ECF No. 12), the Court granted the motion to dismiss filed by the United States and dismissed the violation notice.

1

entered a plea of not guilty, and a jury trial was scheduled for August 7, 2017.[2] The Defendant

filed the Motion to Dismiss on June 30, 2017. The Motion to Dismiss contends that, "[b]ecause

the [Criminal I]nformation in this case alleges a violation of the Assimilated [sic] Crimes Act

only, and references a state law that has not been assimilated, it fails to state an offense and

should be dismissed. Fed. R. Crim. P. 7." (Mot. to Dismiss 6.)

## II. Applicable Legal Standards and Statutes

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) provides that "[t]he following

defenses . . . must be raised by pretrial motion if the basis for the motion is then reasonably

available and the motion can be determined without a trial on the merits: . . . (B) a defect in the

indictment or information, including: . . . (v) failure to state an offense." Federal Rule of

Criminal Procedure 12(b)(2) provides that "[a] motion that the court lacks jurisdiction may be

made at any time while the case is pending."[3]

---

[2] The jury trial was continued generally pursuant to 18 U.S.C. § 3161(h)(1)(D) pending resolution of the Motion to Dismiss. (ECF No. 16.)

[3] A review of cases involving the ACA in which motions to dismiss were filed indicates that most defendants argue that the court lacks jurisdiction over a charged offense because the state statute is not assimilated under 18 U.S.C. § 13. *See United States v. Reed*, 2010 WL 5390125, at *1 (D. Nev. 2010) ( "The defendants contend that this court is without jurisdiction over the . . . offenses charged . . . because the Nevada statute is not assimilable under 18 U.S.C. § 13(a)."), *aff'd*, 878 F. Supp. 2d 1199 (D. Nev. 2012), *aff'd*, 734 F.3d 881 (9th Cir. 2013); *United States v. Dotson*, 615 F.3d 1162, 1165 (9th Cir. 2010) ("Defendants filed . . . motions to dismiss for lack of subject matter jurisdiction, arguing that [the state statute] is not properly assimilated under the ACA."); *United States v. Mariea*, 795 F.2d 1094, 1096–1102 (1st Cir. 1986) (rejecting defendants' argument that, because the conduct is punishable under the Uniform Code of Military Justice, the ACA does not apply, and discussing the issue of concurrent jurisdiction); *United States v. Walker*, 552 F.2d 566 (4th Cir.), *cert. denied*, 434 U.S. 848 (1977) ("[The defendant] contends that . . . the Uniform Code of Military Justice . . . gives the military jurisdiction to punish a member of the armed forces for drunken driving on a military installation and that such jurisdiction in the military precludes any jurisdiction in the United States District Court to prosecute a member of the armed services for such an offense."). In one case in the Fourth Circuit, because the version of Federal Rule of Criminal Procedure 12(b) to which the court refers was amended in 2014 and no longer reads as stated in the footnote, the defendant's precise argument—failure to state an offense or lack of jurisdiction—is uncertain, although the district court notes that the defendant argued that application of the ACA was precluded by the adoption of the Code of Federal Regulations ("CFR") for locations within the jurisdiction of the National Park Service ("NPS"), like the Blue Ridge Parkway. *See United States v. Hope*, 2010 WL 2405354, at *1 n.2 (W.D. Va. 2010) ("Federal Rule of Criminal Procedure 12(b)(3)(B) provides that, "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."), *aff'd*, 408 Fed. App'x 695 (4th Cir. 2011). Federal regulations apply on many non-military federal enclaves, such as the Blue Ridge Parkway and other locations

"The Assimilative Crimes Act provides that absent a governing federal statute, one who commits a state crime on a federal enclave 'shall be guilty of a like offense and subject to a like punishment.'" *United States v. Thomas*, 367 F.3d 194, 197 n.2 (4th Cir. 2004) (citing 18 U.S.C. § 13(a)). "Even though assimilated crimes are derived from state law, they become federal law under 18 U.S.C. § 13." *United States v. Finley*, 531 F.3d 288, 291 (4th Cir. 2008). The ACA "subjects persons on federal lands to federal prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located. In so doing, the ACA establishes uniformity in a state's prohibitory laws where such conduct is not made penal by federal statutes." *United States v. Dotson*, 615 F.3d 1162, 1165 (9th Cir. 2010) (citations and internal quotation marks omitted). "The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis v. United States*, 523 U.S. 155, 160 (1998) (citations omitted). The ACA provides in relevant part:

> (a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). The ACA supports a "state's 'determination that [the conduct] is dangerous to the general welfare of its citizens,'" and establishes uniformity within a state. *Dotson*, 615

---

administered by the NPS. "Every court to have decided the issue has concluded that federal regulations are 'enactment[s] of Congress' within the meaning of the [ACA]." *United States v. Yates*, 211 Fed. App'x 925, 927 (11th Cir. 2006) (collecting cases). Interestingly, Title 36 of the CFR, which provides for the "use, management, government, and protection of persons, property, and natural and cultural resources within areas under the jurisdiction of the [NPS]," includes section 4.2, which itself assimilates state law concerning traffic and the use of vehicles within a park area. 36 C.F.R. § 4.2; *see also United States v. Reed*, 734 F.3d 881, 885–89 n.3 (9th Cir. 2013) (noting that § 4.2 "is generally a standalone vehicle through which the United States assimilates state traffic laws into federal law" and that "[i]n these cases, the ACA is generally not even invoked.").

3

F.3d at 1166; *see also United States v. Mariea*, 795 F.2d 1094, 1099–1100 (1st Cir. 1986) (noting that the two aims of Congress in enacting the ACA were "to ensure that criminal offenses not be committed with impunity on federal enclaves simply by crossing jurisdictional lines" and "to punish most minor offenses committed on federal enclaves in conformity to local law, thus achieving statewide uniformity"); *United States v. Clark*, 195 F.3d 446, 449 (9th Cir. 1999); *United States v. Reed*, 734 F.3d 881, 885 (9th Cir. 2013).

The Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 801 *et seq.*, "pertain[s] only to members of the armed forces." *Mariea*, 795 F.2d at 1100. "The UCMJ provides four methods of disposing of cases involving offenses committed by servicemen: the general, special, and summary courts-martial, and disciplinary punishment administered by the commanding officer pursuant to Art[icle] 15 [of the] UCMJ, 10 U.S.C. § 815." *Middendorf v. Henry*, 425 U.S. 25, 31 (1976) (quoted in *Downey v. U.S. Dept. of the Army*, 110 F. Supp. 3d 676, 681 n.4 (E.D. Va. 2015)). The four methods "vary in both procedural protections afforded and in the seriousness of the possible punishments that may result." *Downey*, 110 F. Supp. 3d at 681 n.4 (citing *Middendorf*). Disciplinary punishment under Article 15 is non-judicial, the least formal, and constitutes an "administrative method of dealing with the most minor offenses . . . ." *Id*. The First Circuit discussed the UCMJ in detail in the *Mariea* decision:

> The articles of the UCMJ . . . pertain only to members of the armed forces. And they differ from civilian criminal statutes in a number of important respects. For one, the primary goal of the UCMJ, unlike that of state and federal criminal law, is instilling and maintaining discipline, on the notion that "a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns" are key to an effective fighting force. As a result, the UCMJ regulates military life far more comprehensively than a typical state criminal code regulates civilian life, with "strict discipline and regulation that would be unacceptable in a civilian setting." Another key difference is that minor offenses under the UCMJ are often enforced only by "forms of administrative discipline which are below the threshold of what

4

would normally be considered a criminal sanction . . . ." Finally, military courts-martial and the civilian court system constitute totally separate systems of justice, with different procedures, protections and personnel. It is clear that for service personnel—especially those stationed in this country in times of peace—military justice was designed to supplement, not to displace, the civilian criminal justice system. Thus a provision of the UCMJ, enforceable only within the military establishment, cannot be construed to displace a civilian penal provision.

795 F.2d at 1100–01 (citations omitted). The particular federal statute at issue, which is Article

111 of the UCMJ (codified at 10 U.S.C. § 911), provides:

(a) Any person subject to this chapter who--
(1) operates or physically controls any vehicle, aircraft, or vessel in a reckless or wanton manner or while impaired by a substance described in section 912a(b) of this title (article 112a(b)), or
(2) operates or is in actual physical control of any vehicle, aircraft, or vessel while drunk or when the alcohol concentration in the person's blood or breath is equal to or exceeds the applicable limit under subsection (b),
shall be punished as a court-martial may direct.
(b)(1) For purposes of subsection (a), the applicable limit on the alcohol concentration in a person's blood or breath is as follows:
(A) In the case of the operation or control of a vehicle, aircraft, or vessel in the United States, such limit is the lesser of--
(i) the blood alcohol content limit under the law of the State in which the conduct occurred, except as may be provided under paragraph (2) for conduct on a military installation that is in more than one State; or
(ii) the blood alcohol content limit specified in paragraph (3).
(B) In the case of the operation or control of a vehicle, aircraft, or vessel outside the United States, the applicable blood alcohol content limit is the blood alcohol content limit specified in paragraph (3) or such lower limit as the Secretary of Defense may by regulation prescribe.
(2) In the case of a military installation that is in more than one State, if those States have different blood alcohol content limits under their respective State laws, the Secretary may select one such blood alcohol content limit to apply uniformly on that installation.
(3) For purposes of paragraph (1), the blood alcohol content limit with respect to alcohol concentration in a person's blood is 0.10 grams of alcohol per 100 milliliters of blood and with respect to alcohol concentration in a person's breath is 0.10 grams of alcohol per 210 liters of breath, as shown by chemical analysis.
(4) In this subsection:
(A) The term "blood alcohol content limit" means the amount of alcohol concentration in a person's blood or breath at which operation or control of a vehicle, aircraft, or vessel is prohibited.

5

(B) The term "United States" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa and the term "State" includes each of those jurisdictions.

10 U.S.C. § 911.

The Virginia criminal statute at issue is Va. Code Ann. § 18.2-266, which provides:

It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (v) while such person has a blood concentration of any of the following substances at a level that is equal to or greater than: (a) 0.02 milligrams of cocaine per liter of blood, (b) 0.1 milligrams of methamphetamine per liter of blood, (c) 0.01 milligrams of phencyclidine per liter of blood, or (d) 0.1 milligrams of 3,4-methylenedioxymethamphetamine per liter of blood. A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii), (iv), or (v).

Va. Code Ann. § 18.2-266.

The concept of concurrent jurisdiction[4] is also relevant. The Fourth, First, and Ninth Circuits, as well as some district courts, note that it is well-established that federal district courts share concurrent jurisdiction with military courts over violations of the laws of the United States by military personnel whether on or off the military reservation. *United States v. Walker*, 552 F.2d 566, 567 (4th Cir.), *cert. denied*, 434 U.S. 848 (1977) (citing cases); *Mariea*, 795 F.2d at

---

[4] Here the phrase concurrent jurisdiction refers to the overlapping jurisdiction between the federal district courts and military courts. But the phrase is used in some contexts to refer to the overlapping jurisdiction between the federal and state governments. In addition to concurrent jurisdiction, on all lands occupied or owned by the United States, there can also be exclusive, partial, and proprietorial jurisdiction  To further complicate matters, on a military installation, the type of jurisdiction can vary depending on the particular parcel of land involved and how and when it was acquired. William K. Suter, *Juvenile Delinquency on Military Installations*, 1975-JUL Army Law. 3, 9 (1975).

1101 (citing 18 U.S.C. § 3231 and cases); *United States v. Debevoise*, 799 F.2d 1401, 1403 (9th Cir. 1986); *see also United States v. Fulkerson*, 631 F. Supp. 319, 321–24 (D. Haw. 1986). The district court in *Fulkerson* also noted that

> the concept of concurrent jurisdiction is extremely relevant to determining the intended scope of the ACA. The fact that Congress has provided for substantial overlap in offenses defined both under the UCMJ and the general federal code is a strong indication that Congress did not intend to preempt assimilation of state law via the ACA by enactments contained in the UCMJ.

631 F. Supp. at 324; *see also Mariea*, 795 F.2d at 1101 ("This overlap in civilian and military jurisdiction makes it clear that Congress did not intend to preclude assimilation of state law under the ACA with provisions in the UCMJ.") (citing *Fulkerson*).

### III.    The Parties' Positions

The Defendant contends that, because he is, and was at the time of the offense, an active duty member of the United States Army and, thus, subject to the Uniform Code of Military Justice ("UCMJ"), and because "the UCMJ's driving under the influence charge[5] preempts application of Va. Code § 18.2-266 in this case, this Court must dismiss the driving under the influence charge against [him]." (Mot. to Dismiss 1.) The Defendant acknowledges that a "forty-year-old Fourth Circuit opinion addresses and rejects this argument," referring to *United States v. Walker*, 552 F.2d 566, but he contends that intervening Supreme Court authority— *Lewis v. United States*, 523 U.S. 155 (1998), and *Torres v. Lynch*, 136 S. Ct. 1619 (2016)— changes the analysis such that *Walker* is no longer good law. In his reply, the Defendant contends that *Lewis* with its two-step test "impliedly rejected" *Walker*'s "general applicability" test and that *Walker* relies on faulty reasoning and invalid case law.

---

[5] Despite his use of the word "charge," the Defendant is presumed to be arguing that the UCMJ's *provision* that punishes drunk driving by military personnel—10 U.S.C. § 911—"preempts application" of Va. Code Ann. § 18.2-266, since he was not *charged* under the UCMJ.

The United States contends that *Walker* remains good law, *Lewis* does not undermine or abrogate *Walker*, and *Walker* requires denial of the Motion to Dismiss.

## IV.    Discussion

The issue presented by the Motion to Dismiss is whether the existence of the statute, 10 U.S.C. § 911, Article 111 of the Uniform Code of Military Justice, precludes assimilation of Va. Code Ann. § 18.2-266, the Virginia DUI statute, pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13, where the Defendant is an active duty member of the United States Army who is charged with a DUI that occurred on Fort Lee, Virginia.

### A. Background: Two Systems of Justice and Concurrent Jurisdiction

It is generally accepted that when a member of the armed services "commits an offense that violates both the UCMJ and Title 18 of the U.S. Code, prosecution is proper either in the federal district courts or at courts-martial."    Major Aaron L. Lykling, *The Disposition of Intoxicated Driving Offenses Committed by Soldiers on Military Installations*, 2013-JAN Army Law 5, 12 (2013).    "To avoid conflict over investigative and prosecutive jurisdiction, the Attorney General and the Secretary of Defense executed a memorandum of understanding (MOU) relating to the investigation and prosecution of crimes over which the Department of Justice and the Department of Defense have concurrent jurisdiction." U.S. Dept. of Justice, U.S. Attorneys' Manual, Criminal Resource Manual ("DOJ Manual") § 9-20.115—Prosecution of Military Personnel (2017).   The MOU, which was issued in 1984 and implemented in 1985, is incorporated in the DOJ Manual and as Appendix 3 in the *Manual for Courts-Martial, United States* (2012) ("MCM").    The MOU "establishes policy for the Department of Justice and the Department of Defense with regard to the investigation and prosecution of criminal matters over which the two Departments have jurisdiction."    MCM, App. 3.    Under the MOU, most crimes

8

committed by members of the armed services on military reservations are resolved through military justice channels, but the MOU "permits civil investigation and prosecution in Federal district court in any case when circumstances render such action more appropriate." DOJ Manual § 9-20.115.

Army Regulation 27–10 permits the military to coordinate issues relating to the MOU with the local United States Attorneys' Offices ("USAO"). U.S. Dept. of Army, Reg. 27-10, para. 2-2 (2016). "Under this authority, most installations have arranged for federal prosecution of on-post Soldier DWI offenses." Lykling, at 13. Major Lykling explains that, while there is no mandatory policy regarding the disposition of these offenses, "[t]he majority of CONUS[6] installations refer on-post Soldier DWI cases to the local USAO for prosecution in federal court" while "[a] minority of CONUS installations . . . adjudicate all on-post Soldier DWI offenses chiefly under Article 15."[7, 8] *Id.* at 8. To obtain this data, Major Lykling surveyed the treatment of on-post DWI offenses committed by soldiers throughout the U.S. Army. *See generally id.* Lykling also notes that several members of the armed services "have unsuccessfully challenged application of the ACA in DWI cases." *Id.* at 13–14 (citing *Mariea*, *Debevoise*, and *Walker*).

Lykling explains that the choice of forum rests with the military installation and its local USAO, not with the armed service member-defendant. *Id.* at 14. A member of the armed services does not have a right to demand a court-martial in lieu of federal prosecution. *United States v. Verch*, 307 Fed. App'x 327, 329 (11th Cir. 2009) (Verch was prosecuted in federal

---

[6] CONUS refers to the contiguous United States.

[7] As noted previously herein, Article 15 is non-judicial; it is an administrative method of dealing with what are supposed to be "minor offenses" without subjecting the soldier to a court-martial. Lykling, at 8–9; *see also Downey*, 110 F. Supp. 3d at 681 n.4 (citing *Middendorf*).

[8] Interestingly, another decision from the Eastern District of Virginia indicates that most Marine Corps installations, as opposed to the Army installations surveyed by Lykling, within the geographical area of the Fourth Circuit resolve their DWI cases within the military justice system and not by prosecution in federal court. *United States v. Crank*, 2012 WL 913626, at *1 (E.D. Va. 2012).

court after court-martial charges were dismissed without prejudice.). *See also United States v. Talbot*, 825 F.2d 991, 992–97 (6th Cir. 1987) (Talbot was prosecuted in federal court after court-martial charges were dismissed without prejudice.).[9] The MOU explicitly states that it "is not intended to confer any rights, benefits, privileges or form of due process procedure upon individuals." Dept. of Defense Directive 5525.7, Jan. 22, 1985; MCM, App. 3. Moreover, the guidelines in the MOU "were promulgated for administrative convenience, and defendants cannot rely on them to deprive a district court of jurisdiction." *Mariea*, 795 F.2d at 1102 n.22.

The United States Court of Appeals for the Fourth Circuit recently "clarif[ied] the difference between the military and civilian criminal justice and penal systems," noting that these systems "are separate as a matter of law" and that "military law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *United States v. Joshua*, 607 F.3d 379, 382–83 (4th Cir. 2010) (quoting *United States v. Dowty*, 48 M.J. 102, 106 (C.A.A.F. 1998); *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975)). The Fourth Circuit points out that the UCMJ contains "broader criminal prohibitions" but that those prohibitions are applicable only to military personnel, that "[t]hese distinct bodies of criminal law are enforced by different prosecutorial and court systems," that the "civilian and military court systems have markedly different safeguards and procedures," and that there is a separate "military penal system." *Id.* at 383–84. The Sixth Circuit agrees:

Case law has long recognized in a variety of contexts that the military by

---

[9] An accused service member facing Article 15 non-judicial punishment can demand a trial by court-martial if he chooses, rather than non-judicial punishment, according to the UCMJ, but this does not give him the right to elect a court-martial in lieu of federal prosecution. 10 U.S.C. § 815 ("[Non-judicial] punishment may not be imposed upon any member of the armed forces under this article [Article 15] if the member has, before the imposition of such punishment, demanded trial by court-martial in lieu of such punishment."). *See also Crank*, 2012 WL 913626, at \*4 ("A servicemember has the right to demand a trial by court-martial for all offenses. 10 U.S.C. § 815(a)."). The *Crank* decision also explains that "before a commanding officer can impose NJP, that officer must obtain a waiver of a servicemember's right to trial by court-martial." *Id.*

necessity constitutes a specialized environment separate from civilian society. This independence extends to the military justice system, which embodies a unique jurisprudence separate and apart from the law which governs in the federal judicial establishment, with different procedures, protections, and personnel, and which is designed to accomplish goals diverse from those served by the civilian criminal justice system. As a consequence of the foregoing, it is well established that, under proper circumstances, as here, military and civilian courts enjoy concurrent jurisdiction to prosecute armed forces personnel for criminal wrongdoing, inasmuch as the military justice system was designed to supplement rather than displace the civilian penal system, and such concurrent jurisdiction affords the *pertinent authorities* a choice of forum in which to prosecute the offender, an election generally resolved by considerations of comity and relevant military and civilian interests.

*Talbot*, 825 F.2d at 996–97 (collecting cases) (emphasis added).

With this background in mind, the Court examines the relevant case law and the Defendant's arguments.

### B. Relevant Case Law: Pre-*Lewis*

In *Walker*, the defendant, a member of the armed services, was convicted of drunk driving under Va. Code Ann. § 18.2-266, assimilated to the federal military installation—Fort Belvoir in the *Walker* case—pursuant to 18 U.S.C. § 13. 552 F.2d at 567. Walker appealed, arguing that 10 U.S.C. § 911, Article 111 of the UCMJ, "gives the military jurisdiction to punish a member of the armed forces for drunken driving on a military installation and that such jurisdiction in the military precludes any jurisdiction in the United States District Court to prosecute a member of the armed services for such an offense." *Id.* The Fourth Circuit rejected Walker's argument. It stated first that Walker overlooks that federal courts have concurrent jurisdiction with military courts over violations of the laws of the United States by military personnel on or off the military reservation. *Id.* (citing cases). The Fourth Circuit also concluded that Article 111 of the UCMJ "is not an enactment of Congress *within the meaning of the Assimilative Crimes Act*." *Id.* at 568 n.3 (emphasis in original). The Fourth Circuit based its

11

conclusion on the "well-established doctrine . . . of concurrent jurisdiction" as well as the anomalies that would be created: that state law would apply to a civilian traveling on a highway through a military reservation but not to a member of the military driving along the same highway, even though the actions of the member of the military may have no more relation to the military itself than the actions of the civilian. *Id.* The Fourth Circuit concluded that Congress did not intend such anomalies and that Congress, "in creating the exception to [an act or omission] 'made punishable by any enactment of Congress,'" intended "any enactment of Congress" to mean "Congressional enactments of general applicability." *Id.* Since the UCMJ applies only to those in the military, it is not an "enactment of general applicability."

Although not essential to its holding, the Fourth Circuit also observed the "modern trend toward trying military personnel before District Courts where the offense involved is essentially civilian in nature." *Id.* (citing *O'Callahan v. Parker*, 395 U.S. 258 (1969)). *O'Callahan* had established a "service-connection" test to determine the jurisdiction of a court-martial, but *O'Callahan*'s test was overruled in *Solorio v. United States*, 483 U.S. 435 (1987). In *Solorio*, the Court held that "the jurisdiction of a court-martial convened pursuant to the Uniform Code of Military Justice (UCMJ) to try a member of the Armed Forces [does not] depend[] on the 'service connection' of the offense charged . . . ." 483 U.S. at 436. The Court concluded "that the requirements of the Constitution are not violated where . . . a court-martial is convened to try a serviceman who was a member of the Armed Services at the time of the offense charged." *Id.* at 450–51.

Despite the Defendant's argument to the contrary, the holding in *Solorio* does not undermine *Walker*'s "general applicability test" or *Walker*'s holding that Article 111 is not an enactment of Congress within the ACA. The holding in *Solorio* rejected *O'Callahan*'s "service-

12

connected" approach to court-martial jurisdiction, but it did not address the scope of a district court's jurisdiction to try a member of the armed services. As noted previously herein, the two systems are separate as a matter of law and "military law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Joshua*, 607 F.3d at 382–83 (citations omitted).

Other circuits have reached the same conclusion as the Fourth Circuit in *Walker*. In *United States v. Mariea*, 795 F.2d 1094, the First Circuit vacated the decision in *United States v. Smith*, 614 F. Supp. 454 (D. Me. 1985), that had dismissed drunk driving charges as to defendants Smith and Mariea. The First Circuit held that the UCMJ did not prevent assimilation of the Maine state DUI statute where defendants, members of the Navy, were charged with DUI on a naval air station. 795 F.2d at 1096. The First Circuit explicitly rejected the same argument the Defendant makes here, concluding that the phrase "any enactments of Congress" referenced in the ACA means "*generally applicable* federal criminal laws," and not "statutes of restricted applicability," like the UCMJ. *Id.* at 1098–99. The First Circuit reached this conclusion after examining the legislative history and the changes to the language of the ACA over the years, as well as other relevant statutes, beginning with the first Federal Crimes Act, enacted in 1790. *Id.* at 1098. Citing the review of the history of the ACA by the Supreme Court in *United States v. Sharpnack*, 355 U.S. 286, 288–89 (1958), the First Circuit notes that, throughout the history of the United States, it was apparent that a "comprehensive set of penal laws was needed to govern offenses committed on federal property" and that "[t]here was never any suggestion that the . . . articles . . . [that were] (precursors to the UCMJ) which were in existence in 1825 and thereafter would toll the operation of the ACA." *Id.* The First Circuit's thorough examination includes a reference to *Sharpnack* and other Supreme Court and circuit court decisions that have

13

acknowledged that the ACA refers to "generally applicable federal criminal laws." *Id.* at 1098–

99 & n.12 (citing, *inter alia*, *Williams v. United States*, 327 U.S. 711, 718–19 (1946); *Johnson v.*

*Yellow Cab Transit Co.*, 321 U.S. 383, 398–401 (1944) (Frankfurther, J., dissenting); *United*

*States v. Press Publishing Co.*, 219 U.S. 1, 10–13 (1911); *United States v. Butler*, 541 F.2d 730,

734 (8th Cir. 1967). The First Circuit also points out that drunk driving "is not an offense

peculiar to military society, as disobeying an order by a superior or leaving an assigned post may

be." *Id.* at 1101. It notes that while a prohibition against drunk driving

> belongs appropriately in the UCMJ for situations where there is no adequate
> civilian enforcement mechanism (such as abroad or in a war theatre), or where
> military discipline is strongly implicated (such as where the driver is on duty), it
> is also an offense which may often be better left to civilian authorities even when
> occurring on a military base. The laws governing the safety of state roads (which
> will often interconnect with those in a federal installation) are precisely the kinds
> of laws that a state has a strong interest in seeing enforced uniformly as to all
> persons, on or off a military base.[10]

*Id.* at 1101–02.

Similarly, in *United States v. Debevoise,* the Ninth Circuit held that the UCMJ was not an

"enactment of Congress" for purposes of the ACA and therefore, the state DUI statute was

properly assimilated where the defendant, a member of the Army, drove while drunk on a

military base. *United States v. Debevoise*, 799 F.2d 1401, 1402–03 (9th Cir. 1986) (citing *Walker*

and *Mariea* in support of its holding). Like the Defendant herein, Debevoise claimed that the

UCMJ prevented application of the ACA to military personnel who drive while drunk on federal

property. Citing *Walker* and *Mariea* and concluding that Congress, in enacting the ACA,

intended "any enactment of Congress" to refer only to enactments of general applicability and

---

[10] Major Lykling also discussed the advantages of prosecuting on-post Soldier DWI cases in federal court rather than under the UCMJ, noting the public safety and punishment objectives of state repeat offender laws, the benefit of federal probation on good order and discipline, the benefit of insulating the Army from public criticism of lenient and disparate treatment, and the deterrence value of federal prosecution. Lykling, at 10–14.

not to enactments such as the UCMJ, the Ninth Circuit rejected Debevoise's argument. *Id.*

A district court within the Ninth Circuit also considered this issue in 1986, several months before the decisions in *Debevoise* and *Mariea* were issued. In *United States v. Fulkerson*, 631 F. Supp. 319 (D. Haw. 1986), the district court relied on *Walker* and a pre-*Walker* district court decision within the Fourth Circuit, *United States v. O'Byrne*, 423 F. Supp. 588 (E.D. Va. 1973), that also rejected the argument that Article 111 of the UCMJ precludes application of Virginia's drunk driving laws to a serviceman driving on a federal enclave. 631 F. Supp. at 321–22. The *Fulkerson* court also relied on the Supreme Court's analysis of the ACA in *United States v. Sharpnack*, 355 U.S. 286, 288–89 (1958), which was addressed by the First Circuit in *Mariea*, and rejected the decision in *United States v. Smith*, 614 F. Supp. 454 (D. Me. 1985), that was later vacated by the First Circuit in *Mariea*. 631 F. Supp. at 320–23. The *Fulkerson* court concluded that "the words 'any enactment of Congress' as used in the ACA refer to enactments of general applicability cognizable in the federal courts," and that the UCMJ provision prohibiting drunk driving was not such an "enactment of Congress." 631 F. Supp. at 325.

In 1987, the Sixth Circuit held that the federal district court had concurrent jurisdiction with the military tribunal to try the military doctor-defendant for his alleged misconduct. *United States v. Talbot*, 825 F.2d 991. Talbot was charged originally by way of the UCMJ with sexually molesting female minors and sexually harassing female adults, and a general court-martial was ordered. *Id.* at 993. After the military prosecutors elected to withdraw all military charges against Talbot and refer the matter to the United States Attorney for the Middle District of Tennessee, the United States Attorney investigated the charges, and a grand jury returned an indictment against Talbot, charging multiple violations of 18 U.S.C. § 113. *Id.* at 995–96.

15

Talbot raised issues of double jeopardy and speedy trial violations, but the Sixth Circuit found that jeopardy had not attached and there was no violation of Talbot's speedy trial rights. *Id.* at 992–99.

Other courts have concluded that the UCMJ is not a Congressional enactment of general applicability. *See United States v. Holmes*, 1998 WL 99364, at \*3 (N.D.N.Y. 1998) (rejecting a defense argument that Article 111 of the UCMJ is an enactment of Congress under the ACA and concluding that the UCMJ "is not an act of general applicability") (citing *Mariea*, 795 F.2d at 1102; *Walker*, 552 F.2d at 566); *United States v. Knott*, 722 F. Supp. 1365, 1368 n.7 & n.8 (E.D. Va. 1989) (citing *Walker*, *Mariea*, and *Fulkerson* for the proposition that "[s]ince the UCMJ is applicable only to the military, it is not generally applicable and, therefore, does not bar assimilation" and contrasting "[p]roperly enabled regulations, like the National Park Service regulations at issue here, [which] clearly qualify as Congressional enactments"); *United States v. Rodriquez*, 1986 WL 18266, at \*1 (4th Cir. 1986) (unpublished) (relying on *Walker* to affirm conviction of drunk driving pursuant to ACA); *United States v. Bailey*, 1986 WL 18267, at \*1 (4th Cir. 1986) (unpublished) (same). Similarly, in *United States v. Parades*, the district court noted that

> the case law is unanimous in holding that regulations which constitute a disciplinary code applicable to a limited class of individuals[11], rather than regulations of general applicability, do not constitute "enactments of Congress" for purposes of the Assimilative Crimes Act; their existence does not, therefore, preclude prosecution under that Act for conduct which violates state criminal laws.

*United States v. Parades*, 751 F. Supp. 1288, 1291 (N.D. Ill. 1990) (citing *Walker*, *Mariea*, and *Debevoise*).

---

[11] The individuals in the "limited class" in this case were prisoners. 751 F. Supp. at 1289–90.

### C. *Lewis v. United States*

The Defendant argues that *Lewis v. United States*, 523 U.S. 155 (1998), changes the analysis such that *Walker* is no longer good law. The Defendant contends that the Supreme Court in *Lewis* announced a different test to determine whether a statute is "any enactment of Congress." (Reply 2.) He also contends that *Lewis*'s two-step test "impliedly rejected" *Walker*'s "general applicability" test. *Lewis*'s test is as follows:

> [A] court must first ask the question that the ACA's language requires: Is the defendant's "act or omission . . . made punishable by *any* enactment of Congress." 18 U.S.C. § 13(a) (emphasis added). If the answer to this question is "no," that will normally end the matter. The ACA presumably would assimilate the statute. If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

523 U.S. at 164–65 (internal citations omitted).

In *Lewis*, the petitioner, Debra Faye Lewis, and her husband, James Lewis, were charged in federal court with the murder of his four-year-old daughter while the family lived at Fort Polk, a federal Army base in Louisiana. *Id.* at 158. James Lewis was a member of the United States Army. *United States v. Lewis*, 92 F.3d 1371, 1372 (5th Cir. 1996). Both James and Debra Lewis were charged with and convicted of first degree murder under Louisiana state law, assimilated by the ACA. *Id.* Despite the fact that James Lewis was an active duty service member at the time of the offense, his appeal from conviction did not assert that the federal government could not prosecute him for Louisiana state law murder in light of the existence of the UCMJ's murder and manslaughter provisions, 10 U.S. C. §§ 918–919. The UCMJ is not mentioned in the opinion of

17

the Fifth Circuit or the opinion of the Supreme Court. Rather, the Lewises appealed their district court convictions based on the argument that they should have been indicted under 18 U.S.C. § 1111, the federal murder statute. *Lewis*, 92 F.3d at 1373. Moreover, James Lewis did not join in the appeal to the Supreme Court when the Fifth Circuit denied their appeal—Debra Lewis was the only petitioner in the final iteration of the case.

This appellate progression indicates an acknowledgment of the weakness of the UCMJ-precludes-ACA-application argument. It also underscores the fact that the Supreme Court was not analyzing the interplay between the UCMJ and the ACA in its *Lewis* opinion. And, with regard to the Defendant's argument that *Lewis* impliedly overruled *Walker*, the appellate history supports the opposite conclusion.

In the *Lewis* opinion, the Supreme Court analyzed the history of the ACA, including its legislative history and the changes to the language of the ACA over the years. 523 U.S. at 160–62. It acknowledged that the words "any enactment" in the ACA should not be taken literally, "since a literal reading of the words . . . would dramatically separate the statute from its intended purpose" and "would leave federal criminal enclave law subject to gaps of the very kind the [ACA] was designed to fill." *Id.* at 159–61. The Court also found unacceptable "the narrow interpretation of the relevant words ["any enactment"] (and the statute's consequently broader reach) that the [Government] seems to urge," which would "mean that, with limited exceptions, the ACA would assimilate a state law so long as that state law defines a crime in terms of at least one element that does not appear in the relevant federal enactment." *Id.* at 162–63. Thus, the Supreme Court concluded that "a literal interpretation would produce an ACA that is too narrow . . . [and] the Government's interpretation would produce an ACA that is too broad." *Id.* at 164. At that point in its analysis, the Supreme Court stated the two-step test set forth above. *Id.* at

164–65.

The Defendant argues in the instant case that the answer to the first question in the two-step test—is the defendant's "act or omission . . . made punishable by *any* enactment of Congress"—is "yes" because a provision of the USMJ, specifically 10 U.S.C. § 911, prohibits the operation of a motor vehicle under the influence of alcohol. (Mot. to Dismiss 3.) The United States contends that the answer to the first question is "no," relying on *Walker* and distinguishing *Lewis* because the statute at issue in *Lewis* was in fact a "generally applicable" enactment of Congress. (Response 3–5.) Thus, the United States contends, since the answer to the first question is "no," there is no need to proceed to the second step.

The Court agrees with the United States that the answer to the first question in this case is "no." The Defendant's act of driving under the influence of alcohol is not made punishable by any enactment of Congress within the meaning of the ACA because the UCMJ is not a "Congressional enactment of general applicability." In *Lewis*, the Supreme Court did not address or even mention the UCMJ or the decisions that have addressed the interplay between the UCMJ and the ACA: *Walker*, *Mariea*, *Debevoise*, *Fulkerson*, or others. The Defendant argues that it is significant that the *Lewis* decision did not include a statement expressly adopting the "general applicability" test from *Walker* nor did it state that a court must only consider statutes that are "generally applicable" when considering the first question. But in *Lewis*, the Supreme Court was dealing with a federal criminal statute, 18 U.S.C. § 1111, that applied to anyone who committed murder on a federal enclave, thus making it unnecessary for the Court to address *Walker*'s "general applicability" test. Instead, the Court was required to set forth a test to determine whether that federal statute—clearly a "Congressional enactment of general applicability"—precluded application of the Louisiana state law in question. Thus, the Supreme

Court in *Lewis* was not required to and did not address the issue of whether the relevant federal statute was "generally applicable" because it was clear that the federal criminal statute at issue in *Lewis*, 18 U.S.C. § 1111, was a Congressional enactment of general applicability.

The Court finds the Defendant's argument that *Lewis* overruled the "general applicability test" in *Walker* to be without merit. *Lewis* is readily distinguishable from *Walker* because *Lewis* involved a federal criminal statute whereas *Walker* did not. *Compare Lewis,* 523 U.S. at 168–172, *with Walker,* 552 F.2d at 568 n.3. The general applicability of the federal statute simply was not at issue in *Lewis* because the federal statute at issue there was one of general applicability. In other words, the federal murder statute in *Lewis* applied to *anyone* who committed a murder on a federal enclave, not just members of the Armed Forces. The *Lewis* Court did not address general applicability (nor was it necessary to do so), and it is misguided to suggest that the Court "impliedly rejected" a matter that was simply not at issue. Further, no courts have cited or interpreted *Lewis* to hold what the Defendant asserts. Rather, since *Lewis,* courts have continued to apply the logic of *Walker* and *Debevoise. See infra* Part D.

There is also some indication, based on *Lewis,* that only federal enactments that create federally prosecutable crimes are "enactments" within the meaning of the ACA—enactments that "ma[ke] punishable" by the federal judicial system the act or omission giving rise to the criminal case. As noted previously, the UCMJ is not federal criminal law. Rather, it is a "specialized, internal disciplinary code." *Mariea,* 795 F.2d at 1098. Prosecution for violations of the UCMJ's punitive articles, 10 U.S.C. §§ 877–934, cannot be conducted by the civilian federal district courts and Assistant United States Attorneys from the Department of Justice, but instead violations of the UCMJ must be handled internally through either a non-judicial punishment ("NJP") meted out by the offending service member's commanding officer under

20

Article 15 of the UCMJ or by trial by court-martial. 10 U.S.C. §§ 815–821. With regard to the former method, "[t]he Supreme Court has expressly stated that 'Article 15 punishment, conducted personally by an accused's commanding officer, is an *administrative method* of dealing with the most minor offenses.'" *United States v. Trogden*, 476 F. Supp. 2d 564, 569 (E.D. Va. 2007) (quoting *Middendorf v. Henry*, 425 U.S. 25, 31–32 (1976) (emphasis added in *Trogden*)). "Lower courts have further held that NJP is a nonadversarial proceeding that is regarded as noncriminal in nature." *Id.* (citations omitted). This position is bolstered by the fact that NJPs do not implicate double jeopardy; a service member can be prosecuted for a state or federal offense in civilian court even if he has already been disciplined through an NJP by his commanding officer. Notably, in *United States v. Trogden*, the court held that "the Double Jeopardy Clause does not prevent the government from criminally prosecuting [the] defendant for driving under the influence of alcohol, even after [the] defendant received NJP under Article 15 from his commanding officer." *Id.* at 571.

NJPs may be imposed for "minor offenses," a category which includes Article 111 (10 U.S.C. § 911) driving under the influence. 10 U.S.C. § 815; *see generally, e.g., Trogden*, 476 F. Supp. 2d 564; *United States v. Turner*, 2017 WL 1154968 (D. Me. Mar. 26, 2017). While an accused service member facing NJP can always demand a trial by court-martial if he wishes, *see* 18 U.S.C. § 815, most service members do not take this option, given the impact of a court-martial on their military record. *See* Lykling, at 5 ("Nonjudicial punishment is mutually appealing to Soldiers and commanders. By accepting an Article 15, a Soldier reduces his punitive exposure and, more importantly, avoids a conviction.") Regardless, the fact that one of the two possible "punishments" for a UMCJ offense is something that "does not constitute criminal punishment," and therefore does not implicate the Double Jeopardy Clause, supports the

21

position that the UCMJ is not a punitive enactment, and therefore it is not an "enactment" within the meaning of the ACA. *United States v. Clark*, 195 F.3d 446, 451 (9th Cir. 1999) ("[N]either the UCMJ nor the Rules for Courts-Martial is a punitive enactment of Congress for purposes of the ACA."). Thus, because the Defendant's "act or omission" here—driving under the influence—"is not made punishable" i.e., is not made a *crime*, "by any enactment of Congress," the ACA inquiry ends here, and the government is free to prosecute the Defendant under applicable state law. 18 U.S.C. § 13(a); *Lewis*, 523 U.S. at 164.

The Court also disagrees with the Defendant regarding the effect of *Torres v. Lynch*, 136 S. Ct. 1619 (2016). The Defendant contends that the *Torres* decision supports his argument regarding the *Lewis* decision. In *Torres*, the Supreme Court had to decide, in the context of the Immigration and Nationality Act, whether a particular state offense counted as an "aggravated felony" when it has every element of a listed federal crime except the one requiring a condection to interstate or foreign commerce. The Supreme Court referred to *Lewis*'s instruction that, in making the assessment in the ACA context as to whether a federal and a state law are sufficiently alike such that only the federal law will apply, "courts should ignore jurisdictional elements" and "other technical[] considerations." 136 S. Ct. at 1631. *Torres* does not otherwise address the ACA, nor does it address the UCMJ at all. *Torres* is not particularly relevant and certainly not dispositive of the issue before the Court.

If the Court were to answer the first question in *Lewis* affirmatively and say that the UCMJ is an "enactment of Congress" that "ma[kes] punishable" the Defendant's "act or omission," then the Court would ask the second question—

> whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say because its application would interfere with the achievement of a federal policy, because the state law would effectively

rewrite an offense definition that Congress carefully considered, or because
federal statutes reveal an intent to occupy so much of a field as would exclude use
of the particular state statute at issue.

523 U.S. at 164. The second question requires a court to consider "legislative intent: [d]oes

applicable federal law indicate an intent to punish conduct such as the defendant's to the

exclusion of the particular state statute at issue?" *Id*. at 166.

The Defendant contends that *Walker* ignores "clear Congressional intent" with regard to

the UCMJ. The Defendant refers to the legislative history of the UCMJ, correctly pointing out

that the purpose of the UCMJ:

> was to establish one system for the administration of military justice uniformly
> applicable in all of its parts to the Army, the Navy, the Air Force, and the Coast
> Guard in time of war and peace. . . . It is the sole statutory basis today in all of
> our armed forces for: 1. The imposition of limited disciplinary penalties for
> minor offenses without judicial action.

The Judge Advocate General's School, U.S. Army, *The Background of the Uniform Code of

Military Justice* 11 (1959). The Defendant also correctly notes that the UCMJ was created to

provide "for the first time in the history of this Nation, a single law for the administration of

military justice in the armed forces." S. Rep. No. 486, at 2 (1949).

But the Defendant disregards the fact that "military justice" was designed "to

supplement, not to displace, the civilian criminal justice system" and "cannot be construed to

displace a civilian penal provision." *Mariea*, 795 F.2d at 1101. Moreover, because there is

concurrent jurisdiction, the authorities—the federal prosecutors and the military authorities—can

determine, after considering the interests of the military, including military discipline, whether to

bring charges against armed service personnel in federal court or use the system of military

justice. *Id.* Given the well-established doctrine of concurrent jurisdiction and the universal

acceptance of two separate criminal justice systems, as demonstrated in the MOU and many

23

other documents, policies, and procedures, the UCMJ does not indicate an intent to punish conduct such as the Defendant's to the exclusion of the state statute. In fact, it is clear, from the MOU and otherwise, that procedures exist to encourage military authorities to consult and coordinate with civilian prosecutors to choose the appropriate forum. And, echoing the First Circuit, the Sixth Circuit also noted that "the military justice system was designed to supplement rather than displace the civilian penal system, and [that] such concurrent jurisdiction affords the pertinent authorities a choice of forum in which to prosecute the offender, an election generally resolved by considerations of comity and relevant military and civilian interests." *Talbot*, 825 F.2d at 997. The Defendant's arguments to the contrary are without merit.

### D. Case Law: Post-*Lewis*

Several post-*Lewis* Ninth Circuit decisions have continued to hold that the phrase "'any enactment' [in the ACA] refers only to enactments of general applicability," and that the articles of the UCMJ are not enactments of general applicability. *United States v. Clark*, 195 F.3d 446, 450–51 (9th Cir. 1999). "Because [the UCMJ and the Rules for Courts-Martial] are not *generally applicable*, these promulgations do not establish federal policy against which a state statute must be measured for conflict or inconsistency." *Id.* at 451 (emphasis added) (citing *Debevoise*, 799 F.2d at 1403). In *United States v. Dotson*, 615 F.3d 1162, 1166 (9th Cir. 2010), the Ninth Circuit applied the two-step test set forth in *Lewis* but stopped "at the first step." The court noted that the statute relied on by defendants did not actually "set forth any rules or regulations governing the sale, consumption, possession of or traffic in beer, wine, or any other intoxicating liquors," but held that even if the statute "did set forth specific prohibitions, it would not preclude assimilation unless those prohibitions were 'of generally applicability.'" *Id.* at 1167 (applying the *Lewis* test and citing *Clark*, *Debevoise*, and *Mariea*). Thus, finding that the

prohibitions would only apply to military personnel, the Ninth Circuit did not consider step two.

In *United States v. Thomas*, 367 F.3d 194, 196–97 (4th Cir. 2004), the defendant challenged the district court's conclusion that the Maryland statute under which he had been previously convicted was substantially similar to the Virginia statute to warrant a fourth-offense conviction but did not challenge the assimilation issue. The Fourth Circuit noted that the defendant was charged with a violation of the ACA "which assimilated Virginia's DWI statutes, *see* Va. Code Ann. §§ 18.2-266, 18.2-270(C)," but the Fourth Circuit did not address specifically the issue of assimilation. *Id.*

In *United States v. Statler*, 121 F. Supp. 2d 925 (E.D. Va. 2000), decided two years after *Lewis*, the district court considered whether a charge of disorderly conduct for public masturbation under the Code of Federal Regulations precluded the application of the ACA and Va. Code Ann. § 18.2-387, Virginia's indecent exposure statute. The district court first explained the purpose of the ACA:

> The ACA provides for the application of state penal statutes to any act or omission committed or omitted in a federal enclave, whether the act or omission, "although not punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State." 18 U.S.C. § 13(a). In so doing, "[t]he [ACA] promotes the evenhanded application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local offense." *United States v. Waites*, 198 F.3d 1123, 1127 (9th Cir. 2000). In essence, the ACA "adopt[s] for otherwise undefined offenses the policy of general conformity to local law," and assimilation serves "to fill gaps in the federal criminal law that applies on federal enclaves."

*Statler*, 121 F. Supp. 2d at 926 (footnotes omitted). The court next applied *Lewis*'s "two-step inquiry for determining whether a state law may be assimilated under the ACA" and ultimately held that assimilation of the Virginia indecent exposure statute was inappropriate because the defendant's actions, if proven, "fit[] well within the federal regulation proscribing 'a display or

25

act that is obscene.' 36 C.F.R. § 2.34." *Id.* at 927. Because federal regulations are considered enactments of Congress, the court moved to step two and concluded that there was no gap for the state statute to fill and, thus, no assimilation of state law in this case. *Id.* at 927–28.

Other post-*Lewis* decisions have held that the federal courts have jurisdiction to prosecute members of the armed services even though those members are also subject to similar UCMJ provisions. Some of these decisions rely on *Walker*, which has not been overruled and remains the law of the Fourth Circuit. *See United States v. Castro*, 2013 WL 829046, at *2 (D. Guam 2013) (quoting *Walker* and citing *Fulkerson* and *Debevoise*). The *Castro* court points out that the military courts "are in agreement with the federal courts" that if an act "is made an offense under the [UCMJ] and is also made an offense under the federal criminal code, a federal court could try it when charged as a violation of the federal criminal code." *Id.* (quoting *United States v. Rubenstein*, 19 C.M.R. 709, 788 (AFCMR 1955) (citing *United States v. Duncan*, 34 M.J. 1232, 1240 (ACMR 1992))); *see also Cockerham v. Willis*, 2016 WL 345590, at *4 (W.D. Tex. 2016) (citing *Walker* and noting that federal district courts share concurrent jurisdiction with military courts); *United States v. Slagle*, 2015 WL 4365316, at *1 (D. Md. 2015) (citing *Walker* and noting that the defendant is subject to federal prosecution under Maryland's drunk driving law for conduct that took place in Fort Meade, Maryland); *McPeak v. United States*, 2012 WL 913637, at *4 (E.D. Va. 2012) (citing *Walker* and rejecting defendant's argument that the court lacked jurisdiction over active-duty military personnel when the offense is prosecutable under the UCMJ).

## E.  Final Considerations

The cases that the Defendant cites for the proposition "that federal UCMJ crimes preempt assimilation of similar state crimes," (Mot. to Dismiss 5), are inapposite to the present scenario.

The Defendant refers the Court to "military court decisions applying *Lewis*" for his position. (*Id.*) First, the Court notes that military court decisions do not provide binding authority that this Court must follow. Moreover, the Court finds that the Defendant misreads the proffered cases in an attempt to bolster his position.

Although the Defendant properly notes that the cited cases involved "the UCMJ's own assimilation provisions, which incorporate the Assimilative Crimes Act," he disregards the significance of that fact. The UCMJ's assimilation provision, Article 134, provides for the assimilation into courts-martial purview of "crimes and offenses not capital" "not specifically mentioned in [the UCMJ]." 10 U.S.C. § 934. This provision has indeed been read to incorporate the Assimilative Crimes Act, so that state crimes and offenses may be prosecuted within the military justice system. *See, e.g.*, *United States v. Rodriguez*, 2016 WL 889027 (A. Ct. Crim. App. 2016); *United States v. Robbins*, 52 M.J. 159 (C.A.A.F. 1999). However, Article 134's assimilative capacity is limited to crimes and offenses "not specifically mentioned" elsewhere in the UCMJ. *See Robbins*, 52 M.J. at 160 ("The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132.") (quoting the Manual for Courts-Martial, Part IV). In other words, where Congress has identified specific offenses punishable in military court, i.e., Articles 80–132 of the UCMJ, and when the UCMJ is being applied in its intended sphere (military discipline), a military court could not then use Article 134 to assimilate and prosecute different versions of those same offenses because, in the words of *Lewis*, there is no "gap" that needs to be filled.

This is the scenario that was faced by the military courts in *Robbins* and *Rodriguez*, the two cases cited by the Defendant. In each case, the courts-martial defendant had been convicted under assimilated state criminal law. *Robbins*, 52 M.J. at 159; *Rodriguez*, 2016 WL 889027 at

27

*1. However, the appellate court in each case found that such assimilation was improper in light of the fact that a UCMJ provision existed that independently prohibited the conduct of which the defendants were accused, and therefore there was "no gap for the [Assimilative Crimes] Act to fill." *Rodriguez*, 2016 WL 889027 at *6 (quoting *Lewis*, 523 U.S. 155, 165 (1998)); *Robbins*, 52 M.J. at 161–62 (discussing *Lewis*). Applying the logic of *Lewis* to the Article 134 context complements the Article's own clear directive: that the provision should be applied to incorporate crimes and offenses "not specifically mentioned in [the UCMJ]."

Such is not the scenario that this Court faces. Here, the UCMJ is not this Court's starting point, as it is for military courts. Rather, this Court's starting point is general federal law. Moreover, this Court does not rely on Article 134 to assimilate state law. Instead, it applies the Assimilative Crimes Act itself to assimilate state law into the body of general federal law. The Court is therefore not limited to assimilating only state laws not otherwise covered by Articles 80–132 of the UCMJ, the way a military court utilizing Article 134 is limited. As a result, the Court finds that the cases the Defendant cites are completely distinguishable and that they do not provide even persuasive authority for resolving the issue at hand.

## V. Conclusion

Accordingly, for the reasons set forth herein, the Court concludes that the Defendant's arguments seeking dismissal of the Criminal Information are without merit, and the Court will deny the Motion to Dismiss.

An appropriate Order shall issue.

Richmond, Virginia
Date: September 18 , 2017

/s/
Roderick C. Young
United States Magistrate Judge